UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

WILLIAM LEE POYCK,   )
    Plaintiff,   )
          )
  vs.      )   1:09-cv-0509-LJM-JMS
          )
MICHAEL J. ASTRUE, Commissioner of )
the Social Security Administration,  )
    Defendant.   )

## ENTRY ON JUDICIAL REVIEW

   The plaintiff, William Lee Poyck ("Poyck"), seeks judicial review of the final decision of the defendant, Commissioner of the Social Security Administration Michael J. Astrue ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Acting for the Commissioner, Administrative Law Judge Albert J. Velasquez ("ALJ Velasquez") determined that Poyck had severe impairments but retained the residual functional capacity ("RFC") to perform a significant number of jobs in the national economy and that, therefore, he was not disabled for purposes of the Act. Poyck contends that ALJ Velasquez failed to fully develop the record. Poyck further contends that ALJ Velasquez erred as a matter of law by failing to abide by a remand order from the Appeals Council ("Council"). For reasons that the Court articulates below, the Commissioner's decision is **AFFIRMED**.

# I. BACKGROUND

## A. RELEVANT MEDICAL HISTORY

Poyck was born on July 15, 1959.  R. at 43.  He has a general equivalency diploma.  R. at 117.  Poyck has experience working as a clerk for a title insurance company and as a supervisor in a mail center.  R. at 112.  Poyck's earnings record shows that he acquired sufficient quarters of coverage to remain insured through June 30, 2005.  R. at 295.  Therefore, Poyck must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.  Poyck alleges that he is disabled due to the residual effects of two gunshot wounds, emphysema/chronic obstructive pulmonary disease ("COPD"), bi-polar disorder, and substance abuse disorder.  R. at 344.  Poyck further alleges that he suffers from hepatitis C and prostatitis.  *Id.*

Poyck reported that he engaged in IV drug use in the 1970s.  R. at 170.  He was diagnosed with hepatitis C as early as 1980.  R. at 123.  In 2000, Poyck was shot twice in the chest during an argument.  R. at 28.  He reported that both of his lungs collapsed and that he was on a respirator for about a month.  R. at 72.  Poyck had testicular surgery twice in 2002.  R. at 171.

Dr. Rajesh Gulati ("Dr. Gulati") treated Poyck at Wishard Memorial Hospital on several occasions.  R. at 181.  On March 26, 2003, Dr. Gulati confirmed that Poyck had hepatitis C.  *Id.*  Poyck was seen by Dr. Gulati again on May 19, 2003.  This time Dr. Gulati diagnosed Poyck as suffering from prostatitis.[1]  *Id.*  On July 15, 2003, Dr. Gulati's diagnosis

---

[1] "Prostatitis" is defined as "[i]nflamation of the prostate."  STEDMAN'S MED. DICT. 1441 (26th Ed. 1995).

included COPD.  On October 17, 2003, Poyck was again seen by Dr. Gulati when he went to Wishard Memorial Hospital complaining of back pain.  R. at 158.

In 2003, the Disability Determination Bureau ("DDB") referred Poyck for an internal medicine examination.  R. at 170.  The examination was performed by Dr. Phillip S. Budzenski ("Dr. Budzenski") of PSB Medical on August 22, 2003.  *Id.*  Dr. Budzenski's impressions were: (1) that Poyck's allegation of back pain was "without clinical findings;" (2) that Poyck was obese by body mass criteria; (3) that Poyck had a history of bipolar illness; (4) that Poyck had a "history of COPD non-compliance with tobacco cessation recommendations;" (5) that Poyck used illicit drugs; and (6) that Poyck had a "history of hepatitis C without evidence of jaundice or abdominal pain on examination."  R. at 174-75. Poyck told Dr. Budzenski that he was able to perform basic activities of daily living.  R. at 170.  Dr. Budzenski concluded:

> In regard to the workplace, claimant should be able to work [eight] hours a day in a seated, standing, or ambulatory position.  [I] [w]ould not have him operate automotive equipment or dangerous equipment, climb ladders, [or] work around unprotected heights due to his marijuana use.  Otherwise there [were] no findings on examination suggesting the need for workplace restrictions.

R. at 175.

Poyck was also required to undergo a mental status examination scheduled by the DDB.  R. at 123.  On March 11, 2004, Dr. J. Mark Dobbs, Psy.D., HSSP ("Dr. Dobbs") of Indianapolis Christian Psychological Services performed the evaluation.  *Id.*  Poyck told Dr. Dobbs that he had received counseling in the past for suicidal ideation and suicide attempts.  *Id.*  Poyck reported taking medication for depression.  *Id.*  Poyck also reported

two psychiatric hospitalizations.  *Id.*  Dr. Dobbs concluded that Poyck "appeared to meet the criteria for bipolar disorder."  R. at 129.

On January 11, 2005, Poyck began receiving treatment for bipolar disorder from the Midtown Community Mental Health Center.  R. at 264.  He was last seen by Dr. Robert Holt ("Dr. Holt") on February 24, 2005.  R. at 270.  Poyck's chart was closed on August 12, 2005, for failure to engage in services.  *Id.*  On November 13, 2006, Poyck returned to the Center for treatment of bipolar and substance abuse disorders.  R. at 271.  He continued to receive treatment from the Center up to the time the record was closed.  R. at 272-88, 349.

## B. PROCEDURAL HISTORY

On June 27, 2003, Poyck filed applications for DIB and SSI alleging that he became disabled on January 1, 2003, due to symptoms associated with COPD, hepatitis C, urinary problems, and back problems.  R. at 111, 256-57.  Poyck's applications were denied on November 12, 2003.  Pl.'s Br. at 3.  Poyck's request for reconsideration was denied on April 6, 2004.  *Id.*  On June 1, 2004, Poyck requested a hearing by an administrative law judge ("ALJ").  R. at 245.  On October 3, 2006, Poyck appeared with counsel and testified before Administrative Law Judge Norman R. Buls ("ALJ Buls") at a video hearing.  R. at 289-319. ALJ Buls was in Tucson, Arizona, while Poyck and his attorney were in Indianapolis, Indiana.  Poyck's girlfriend, Agnes Lavin ("Lavin"), was also present in Indiana as a witness. *Id.*  ALJ Buls concluded that Poyck was not disabled for purposes of the Act, and on October 24, 2006, he issued his decision denying benefits.  R. at 226-33.  On December 28, 2006, Poyck requested a review of ALJ Buls' decision.  R. at 238-44.

4

On February 2, 2007, the Council granted Poyck's request for review, vacated ALJ Buls' decision, and remanded the case with instructions to perform seven tasks: (1) obtain updated medical treatment records and additional evidence concerning Poyck's mental impairments in order to complete the administrative record; (2) obtain evidence from a medical expert who specializes in psychiatry to clarify the nature and severity of Polyck's impairments; (3) further evaluate Poyck's mental impairments in accordance with 20 C.F.R. §§ 1520 and 416.920; (4) evaluate Poyck's obesity; (5) give further consideration to Poyck's maximum RFC during the entire period at issue; (6) if warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations; and (7) if required, conduct a further proceeding to determine whether drug addition and alcoholism are contributing factors material to the finding of disability.  R. at 234-37.

On November 2, 2007, Poyck filed a motion with ALJ Velasquez requesting a consultative examination.  R. at 32.  Poyck asserted that in order for his applications to be fairly and accurately evaluated, a consultative examination needed to be scheduled prior to the second hearing.  *Id.*  Poyck argued that poverty prevented him from presenting evidence of his severe impairments.  R. at 33.  Specifically, Poyck claimed that he could not afford even the minimal co-payments required by charity sources of medical care and that, therefore, he could not obtain a current evaluation of his medical condition on his own.  *Id.*  ALJ Velasquez denied Poyck's motion.  R. at 366.

On January 31, 2008, Poyck appeared with counsel and testified before ALJ Velasquez at a hearing conducted at the Indianapolis Office of Disability Adjudication and Review.  R. at 320.  During the hearing, Poyck testified that he could not work because he had mental problems, problems with breathing, and a need to "be in the bathroom a lot" due

to his prostatitis.  R. at 346.  Poyck estimated that he could walk no more than a block or two before having to sit down.  R. at 337.  He said that he felt "run down all the time" due to hepatitis C.  R. at 338.  Poyck further testified that he was no longer using alcohol or drugs, but that when he was experiencing mania, he could not sleep for days.  R. at 331, 327-28.  Poyck said that when he was manic, he usually watched television or listened to music.  R. at 331.

Lavin testified that Poyck lived with her in her apartment.  R. at 347.  Lavin said that she paid Poyck's medical bills.  R. at 349.  Lavin further testified that Poyck did not like to be around people, but that he did accompany her when she went to the grocery store.  R. at 352.  Lavin said that she did the laundry, general house cleaning, and grocery shopping, but that Poyck washed the dishes.  R. at 351.

Dr. Georgiann Pitcher ("Dr. Pitcher") testified at the hearing as a medical expert.  R. at 320.  She testified that the record failed to demonstrate that Poyck had an impairment or combination of impairments that met or medically equaled the criteria of Listing 12.04 Affective Disorders or Listing 12.09 Substance Addiction Disorders in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  R. at 355.  Dr. Pitcher further testified that, "[t]he medical evidence does[ not] support all of the allegations here today."  *Id.*

Stephanie Archer ("Archer") testified at the hearing as a vocational expert.  R. at 320.  ALJ Velasquez asked Archer if she could identify any jobs that could be performed by an

---

[2] The Social Security Administration's "Blue Book" Listing of Impairments describes, for each major body system, impairments considered severe enough to prevent an individual from doing any gainful activity.  The specified impairments are considered presumptively disabling.  A claimant may also demonstrate presumptive disability by showing that her impairment is accompanied by symptoms that are equal in severity to those described in a specific listing.  20 C.F.R. §§ 404.1525, 1526.

individual Poyck's age, with his education, work experience, and RFC.  R. at 360.  Archer testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as Cashier (22,000 jobs in Indiana); General Office Clerk (2,400 jobs in Indiana); Food Prep Worker (11,000 jobs in Indiana); Cleaner (7,100 jobs in Indiana); and Assembler (12,000 jobs in Indiana).  R. at 360-61.

Archer also testified that if the RFC were restricted further to include only jobs at the sedentary level, the individual would still be able to perform the requirements of representative occupations such as Assembler (2,200 jobs in Indiana); Machine Tender (1,400 jobs in Indiana); and General Office Clerk (2,400 jobs in Indiana).  *Id.*  Upon examination by Poyck's attorney, Archer agreed that the hypothetical individual, if he was "fearful of interacting with others," would not be able to perform the cashier jobs she had identified.  R. at 362.

On October 20, 2008, ALJ Velasquez issued a decision in which he found that Poyck was not disabled for purposes of the Act because he was able to perform a significant number of jobs in the national economy.  R. at 20-31.  On December 19, 2008, Poyck filed a request for a review of ALJ Velasquez's decision.  R. at 7-16.  The Council denied his request for review on February 24, 2009.  R. at 4-6.  This left ALJ Velasquez's decision as the final decision of the Commissioner.  *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  On April 24, 2009, Poyck filed this civil action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.  DISABILITY AND STANDARD OF REVIEW

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.  "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).  In determining whether a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1.  If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2.  If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3.  If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4.  If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5.  If the claimant can perform other work given the claimant's residual functional capacity, age, education and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, then it shifts to the Commissioner at the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Court will sustain the ALJ's findings if they are supported by substantial evidence.  42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999).  In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Id.*  While a scintilla of evidence is

insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However,  the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

## III.  DISCUSSION

### A. ALJ VELASQUEZ'S FINDINGS

Applying the five-step process, ALJ Velasquez first found that Poyck had not engaged in substantial gainful activity since his alleged disability onset date.  R. at 22.  At step two, ALJ Velasquez found that Poyck had severe impairments—specifically, residuals of a gunshot wound, emphysema/COPD, prostatitis, bipolar disorder, and substance abuse disorder.  *Id.*  At step three, ALJ Velasquez found that Poyck failed to demonstrate he had an impairment or combination of impairments that met or medically equaled one of the impairments identified in the Listing of Impairments.  R. at 23.

ALJ Velasquez determined Poyck's RFC in between steps three and four.  To accommodate Poyck's allegations of urinary problems, ALJ Velasquez found that Poyck would need access to a bathroom and an opportunity to change protective undergarments every two hours.  R. at 24.  ALJ Velasquez further concluded that Poyck had the RFC for: (1) light work[3] that required lifting and carrying no more than twenty pounds occasionally and ten pounds frequently; (2) no more than occasional climbing of stairs and ramps, and no climbing of ropes, ladders, or scaffolds; (3) no more than occasional balancing, stooping, kneeling, crouching, or crawling; (4) no work at unprotected heights, around dangerous moving machinery, around open flames and large bodies of water, and no work operating a motor vehicle; (5) only simple and repetitive tasks with no more than superficial interaction with the general public, co-workers, or supervisors; and (6) a work environment relatively free of noxious fumes, gases, respiratory irritants, and extremes of temperature and humidity.  R. at 23-24.  ALJ Velasquez also noted that Poyck's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not credible to the extent they are inconsistent with the [RFC] assessment."  R. at 24.

At step four of the sequential analysis, ALJ Velasquez found that Poyck was unable to perform any of his past relevant work.  R. at 22.  Considering Poyck's age, education, work experience, and RFC—and relying on the testimony of Archer—at step five ALJ Velasquez found that Poyck could perform a significant number of jobs in the national economy and that, therefore, he was not disabled for purposes of the Act.  R. at 30.

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  Light work may require a good deal of walking or standing or involve sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*

## B. POYCK'S ARGUMENTS ON APPEAL

Poyck makes two arguments on appeal.  First, Poyck contends that ALJ Velasquez failed to fully develop the record.  Second, Poyck asserts that ALJ Velasquez erred as a matter of law by failing to abide by a remand order from the Council.  The Court addresses each argument in turn.

### 1. Full Development of the Record

Poyck argues that  ALJ Velasquez erred when he denied Poyck's motion for a consultative examination.  Poyck further contends that ALJ Velasquez failed to fulfill his obligation to conduct a full and fair inquiry of the issues presented because ALJ Velasquez relied on medical evidence "more than five years old."  Pl.'s Br. at 2.  Although Poyck claims his "due process" rights were violated, his basic argument is that ALJ Velasquez failed to fully develop the record.

Although the claimant bears the responsibility of providing medical evidence of his impairments, 20 C.F.R. § 404.1514, it is a well-settled proposition that the ALJ has a basic duty to develop a full and fair record.  *Smith*, 231 F.3d at 437.  An ALJ is required to make a reasonable effort to ensure that the record contains, at a minimum, enough information to assess the claimant's RFC and to make a disability determination.  *See* 20 C.F.R. §§ 416.912(d), 416.927(c)(3); *Skinner v. Astrue*, 478 F.3d 836, 843-44 (7th Cir. 2007); *see also* S.S.R. 96-8p.  Failure to fulfill this obligation is grounds for remand. *Thompson v. Sullivan*, 933 F.2d 581, 586 (7th Cir. 1991).

The decision to require a consultative exam, however, is within the discretion of the ALJ because consultative examinations are not required unless the ALJ cannot otherwise make a disability determination.  *See Skinner*, 478 F.3d at 844; *Stambaugh v. Sullivan*, 929 F.2d 292, 296 (7th Cir. 1991).  "If the ALJ is able to weigh the record evidence and determine whether the claimant is disabled based on that evidence, then he is not required to obtain additional evidence."  *Smith*, 231 F.3d at 443; *see also* 20 C.F.R. § 404.1527(c)(3) (allowing the ALJ to obtain additional evidence if the evidence before him is insufficient to determine whether a claimant is disabled or, if after weighing the conflicting evidence, he cannot reach a conclusion).  Additionally, "[t]he court generally upholds the reasoned judgment of the Commissioner on how much evidence to gather."  *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

In the instant case, ALJ Velasquez met his burden to fully and fairly develop the record.  ALJ Velasquez denied Poyck's motion requesting a consultative examination only after the DDB paid for an internal medicine examination in August of 2003, and a mental status examination in March of 2004.  R. at 170, 123.  In addition, ALJ Velasquez considered updated medical records from the Midtown Community Mental Health Center that were not available during the first hearing.  R. at 272-88.  These included mental health treatment notes showing that just two months prior to the second hearing: (1) Poyck denied experiencing active symptoms of anxiety, depression, or psychosis; (2) Poyck said that he was doing well with his alcohol problem; and (3) Poyck denied experiencing impairments in social or occupational functioning or in activities of daily living.  R. at 287.

Poyck argues that ALJ Velasquez relied on records that were too old by the time of the second hearing, but ALJ Velasquez confirmed—on multiple occasions—that he had

12

obtained all of the available medical records, R. at 323-25, 365-66, and Poyck provided no evidence that his condition had deteriorated.

During the second hearing, ALJ Velasquez also made a concerted effort to probe Poyck's recent medical history and ongoing impairments by asking specific questions about his treatment, symptoms and day-to-day activities.  R. at 326-46.  *See Luna v. Shalala*, 22 F.3d 687, 692-93 (7th Cir.1994) (holding that the ALJ sufficiently developed the record by probing all relevant issues, extensively questioning the claimant about his pain, medication and activities, and reviewing available medical records).  In light of these facts, the Court concludes that ALJ Velasquez did not abuse his discretion when he denied Poyck's motion for a consultative examination.

## 2. <u>Remand Order from the Appeals Council</u>

Poyck's argues that ALJ Velasquez did not comply with the Council's order of remand and requests that the Court review whether ALJ Velasquez failed to follow the Council's instructions during the course of the proceedings.   However, 42 U.S.C. § 405(g) only authorizes judicial review of the Commissioner's final decision.  Whether an ALJ complies with a Council order of remand is an internal agency matter that arises prior to the issuance of the Commissioner's final decision.  The Court does not review internal, agency-level proceedings and, therefore, it will not address whether the ALJ complied with specific provisions of the Council's remand order.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the final decision of the Commissioner of Social Security

in this case is **AFFIRMED**.  Final judgment shall be entered accordingly.

IT IS SO ORDERED this 8th day of June, 2010.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

David Porter Murphy
dpmurphy504@aol.com

14